IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SMART COMMUNICATIONS, HOLDING, INC., *et al.*, | : | Civil No. 1:21-cv-01708 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GLOBAL TEL-LINK CORPORATION, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is Plaintiffs' motion to disqualify the Mette Evans and Woodside Law Firm as counsel for the York County Defendants, and to reassign this and the related patent case[1] to District Court Judge Christopher C. Conner, who was formerly presiding over both actions until he recused. (Doc. 23.) For the following reasons, the court will grant Plaintiffs' motion to disqualify counsel, but deny Plaintiffs' motion to reassign these cases.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs Smart Communications Holding, Inc. and HLFIP Holding, Inc., d/b/a Smart Communications IP Holdings (collectively "Plaintiffs") filed a complaint against Defendants Global Tel*Link Corporation ("GTL"), York County, Pennsylvania ("York County"), York County Prison ("YCP"), and Mr.

---

[1] *See HLFIP Holding, Inc. d/b/a Smart Communications IP Holdings v. York County, et al.*, 1:20-CV-00186

1

Adam Ogle, in his official capacity as acting Warden of YCP ("Mr. Ogle") on October 6, 2021. (Doc. 1.) The complaint alleges violations of the Sherman Act, 15 U.S.C. § 1 (against all defendants), and tortious interference with prospective business relations, unfair competition, and champerty and maintenance against GTL. (*Id.*, pp. 38–47.)[2] All four counts of the complaint relate, in full or in part, to GTL's conduct in relation to and during the pendency of the patent litigation, which was initiated by complaint filed on February 3, 2020. (*Id.*) The instant case has been listed, since its filing, as related to the patent litigation. (Doc. 1-1.) Both cases were previously assigned to Judge Conner.

On November 3, 2021, two attorneys from Mette Evans and Woodside ("MEW") entered their appearances on behalf of York County, YCP, and Mr. Ogle (collectively, "the York Defendants") in this action. (Docs. 14, 18.) The next day, Judge Conner entered an order in this case stating that because an attorney from MEW entered an appearance and the law firm was listed on his conflict list,[3] he would recuse. (Doc. 19.) The order further stated that because the patent case was related to the instant case and that reassignment of both would further the interests of justice and judicial economy, that he was likewise recusing himself from the

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.
[3] Judge Conner's personal attorney joined Mette Evans and Woodside ("MEW") on February 8, 2021. (*See* Doc. 24-1.) Shortly thereafter, Judge Conner recused himself from a different case over which he was presiding because MEW represented the Plaintiff and Judge Conner determined that there was a conflict of interest pursuant to 28 U.S.C. § 455(a). (*Id.*)

patent case. (*Id.*) Both cases were reassigned to the undersigned in accordance with the court's assignment policy.

Shortly thereafter, on November 19, 2021, Plaintiffs filed a motion in this case to disqualify MEW and to reassign this case back to Judge Conner. (Doc. 23.) Plaintiffs also filed a motion to reassign the patent case back to Judge Conner, which motion is addressed by separate order. The York Defendants filed a brief in opposition on December 3, 2021. (Doc. 27.) Plaintiffs filed a reply brief on December 17, 2021. (Doc. 34.) After being granted leave to file a sur-reply brief, the York Defendants filed a sur-reply brief on January 10, 2022. (Doc. 42.) Thus, this motion is ripe for review.

## JURISDICTION AND VENUE

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. The court has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367. Further, venue is appropriate under 28 U.S.C. § 1391.

## STANDARD OF REVIEW

The Third Circuit Court of Appeals has not established the standard to apply when deciding whether to disqualify an attorney whose appearance has resulted or will result in a judge's recusal. Other circuits have considered the question and

held that disqualification may be warranted based upon consideration of certain circumstances.  *See, e.g.*, *In re BellSouth Corp.*, 334 F.3d 914, 962–65 (11th Cir. 2003) (applying the factors test set forth in *Robinson v. Boeing Co.*, 79 F.3d 1053 (11th Cir. 1996) even though the disputed attorney's appearance occurred at the outset of the case rather than interrupting it after substantial judicial investment); *In re FCC*, 208 F.3d 137, 139–40 (2d Cir. 2000) (panel *sua sponte* directed counsel to withdraw its appearance in the matter because the appearance of members of that firm caused the recusal of one of the judges already assigned to the panel); *Robinson*, 79 F.3d at 1054–56 (created an objective test and provided a list of non-exclusive factors courts should examine when determining whether to allow substitute or additional counsel that would result in the recusal of the presiding judge); *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1257 (5th Cir. 1983) (applying a subjective test that involved determining whether the sole or primary motive for retaining counsel was to disqualify the presiding judge).

Upon review of the persuasive authority from other circuits, the court considers the respective merits of the Fifth Circuit's subjective test and the Eleventh Circuit's objective test.  The Fifth Circuit held that "a lawyer may not enter a case for the *primary purpose* of forcing the presiding judge's recusal." *McCuin*, 714 F.2d at 1265 (emphasis added).  As noted in subsequent circuit court decisions, the disadvantage of applying a subjective test is that discerning a party's

motive is a difficult task prone to problematic discovery issues delving into attorney-client communications and fact-finding that involves credibility determinations. *See Robinson*, 79 F.3d at 1055 (noting that no amount of discovery was likely to elicit the true motive, which was elusive and not likely truly ascertainable); *BellSouth*, 334 F.3d at 947 (noting that it is practically impossible to prove a party's true motive); *FCC*, 208 F.3d at 139–40 (making no finding as to good faith or intent, but instead on the fact that counsel knew or should have known of the risk of the presiding judge's recusal before entering an appearance).

    The Eleventh Circuit in *Robinson* set forth the following objective factors for courts to consider and balance: (1) the fundamental right to counsel; (2) the court's docket; (3) the injury to plaintiff; (4) the delay in reaching decision; (5) the judicial time invested; (6) the expense to the parties objecting; and (7) the potential for manipulation or impropriety. *Robinson*, 79 F.3d at 1055. This is a non-exclusive list of factors and none of them are necessary. *BellSouth*, 334 F.3d at 962. The court noted that the weight given to each will vary with the circumstances of the individual case. *Id.* The last factor—the potential for manipulation and impropriety—was noted as being elusive, and the Eleventh Circuit cautioned that "[t]his potential for manipulation and impropriety may be considered, without making specific findings." *Robinson*, 79 F.3d at 1056. Where

the balance of these objective factors favors disqualification, the party resisting such disqualification must show an overriding need for its choice of counsel. *Id.* at 1054-56. An overriding need is defined as "a need that would reflect upon the litigant's ability to have its case fairly presented, rising to constitutional due process concerns." *Id.* at 1056. If an overriding need is shown, it would trump both time delay and loss of judicial time invested. *Id.*

The court finds that applying an objective test avoids the complications that accompany a subjective inquiry into the intent of a litigant or counsel, including potential attorney-client privilege issues. Additionally, applying an objective test better serves important public purposes, such as preventing even the appearance of manipulation of our system of judicial administration. Thus, this court will adopt the objective test set forth by the Eleventh Circuit in *Robinson*.[4]

## DISCUSSION

As detailed in the following sections, the court will review the competing arguments presented by the parties by reference to each of the factors identified in *Robinson* in order to objectively evaluate the merits of the motion to disqualify

---

[4] The court acknowledges that both *Robinson* and *BellSouth* involved motions for leave to add counsel mid-litigation, not motions to disqualify counsel who have already entered their appearances. However, numerous courts have found that this is not a meaningful distinction, as the same considerations are implicated in both situations. *See UCP Int'l Co. v. Balsam Brands, Inc.*, 261 F. Supp. 2d 1026, 1059 (N. D. Ca. 2017) (collecting cases).

MEW. In addition, the court will assess the respective arguments about whether this case should be reassigned to Judge Conner.

### A. Fundamental Right to Counsel

Plaintiffs argue that although parties are given wide latitude in retaining counsel, this choice is not absolute and there are exceptions to this general rule. (Doc. 34, pp. 4–5.) The York Defendants primarily rely on the fundamental right to counsel in defending this motion. The York Defendants contend that their choice of counsel is "entitled to substantial deference," and there is a heavy burden on a movant seeking to disqualify counsel. (Doc. 27, pp. 6–7.) They then argue that Plaintiffs have done no more than make bald assertions unsupported by facts demonstrating that the selection of MEW as counsel was driven by the desire to have Judge Conner recuse himself in both cases.

While the York Defendants are correct that their choice of counsel is entitled to substantial deference, Plaintiffs are also correct that the right to counsel is not absolute. The Fifth Amendment Due Process Clause guarantees civil litigants the right to retained counsel, which ordinarily includes the right to be represented by the counsel of their choice. *McCuin*, 714 F.2d at 1262 (citing *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1118 (5th Cir. 1980) and *Powell v. Alabama*, 287 U.S. 45 (1932)). However, the right to counsel of choice can be overridden where the choice of counsel interferes with the orderly administration of justice.

*BellSouth*, 334 F.3d at 975; *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1209 (11th Cir. 1985); *United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir. 1976). Judge shopping and manipulating the random assignment of judges clearly constitute a threat to the orderly administration of justice. *Selkridge v. United Of Omaha Life Ins. Co.*, 360 F.3d 155, 168 (3d Cir. 2004) (addressing the dangers of judge shopping and cautioning that it could "become an additional and potent tactical weapon in the skilled practitioner's arsenal"); *BellSouth*, 334 F.3d at 959 ("[e]very court considering attempts to manipulate the random assignment of judges has considered it to constitute a disruption to the orderly administration of justice"); *FCC*, 208 F.3d at 139 (disqualifying a lawyer whose appearance resulted in the recusal of the presiding judge in order to preserve "the neutral and random assignment of judges to cases"); *United States v. Phillips*, 59 F. Supp. 2d 1178, 1180 (D. Utah 1999) (collecting cases and scholarly literature indicating that manipulation of the random case assignment process is universally condemned as a disruption of the integrity of the judicial system that would undermine public confident in the assignment process).

Therefore, the fundamental right to counsel favors the York Defendants' position, but the court finds that this factor is not dispositive and will yield to the need to ensure the orderly administration of justice.

### B. The Court's Docket, Delay in Reaching Decision, and Judicial Time Invested

The court notes that this district has been operating for more than seven months with less than its fully authorized complement of active judges. Additionally, the court's docket is congested with numerous complex civil cases. If Judge Conner were frequently caused to recuse himself from cases, it would create a significant burden on the remaining judges within this district. This is especially so in cases in which Judge Conner may have already invested significant judicial resources.

Transfer of a case to a different judge after recusal of the original presiding judge often results in the duplication of judicial resources and significant delay. Furthermore, additional resources are expended when deciding a motion to disqualify after a judge has recused himself–which is the situation at hand. "Judicial resources in this country are limited. It is incumbent on lawyers as officers of the court, as well as judges, to guard against actions and procedures to avoid the useless expenditure of judicial time." *Robinson*, 79 F.3d at 1055.

In this case, the delay is less significant than in the patent case, where Judge Conner's recusal resulted in the rescheduling of a claim construction hearing. However, even in this case, there is still a delay in ultimately resolving the merits of the case due to the reassignment that resulted from Judge Conner's recusal. Therefore, these factors all weigh in favor of disqualifying MEW.

### C. Injury to Plaintiff and Expense to the Parties Objecting

Plaintiffs have not argued any specific injury *in this case* resulting from MEW's entry of appearance and Judge Conner's recusal. Rather, Plaintiffs' arguments about injury and prejudice pertain to the related patent case. The York Defendants have not argued any particular expense that they would incur if MEW would be disqualified. Overall, the court finds that these factors are neutral.

### D. Potential for Manipulation and Impropriety

This last factor is elusive, but important in the analysis of the instant motion to disqualify. First, the court notes that motions to disqualify are strongly disfavored and subject to "particularly strict judicial scrutiny"; the "paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." *UCP*, 261 F. Supp. 3d at 1060 (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985)). As discussed above, judge shopping and manipulating the random assignment of judges constitutes a threat to the orderly administration of justice. Litigants should not be permitted to utilize disqualification of a judge as a trial strategy. *McCuin*, 714 F.2d at 1258. Furthermore, there is a concern that judge-shopping could "become an additional and potent tactical weapon in the skilled practitioner's arsenal." *Selkridge*, 360 F.3d at 168.

Even courts that have not applied the Eleventh Circuit's objective test have expressed concern regarding the potential for manipulation and impropriety attendant to circumstances such as this. For example, in *FCC*, the Second Circuit Court of Appeals *sua sponte* rejected the entry of appearance by an attorney that would have resulted in the recusal of one of the panel judges. In doing so, the court held that "[a]s between a judge already assigned to a panel, and a lawyer who thereafter appears in circumstances where the appearance might cause an assigned judge to be recused, the lawyer will go and the judge will stay." *FCC*, 208 F.3d at 139. Further, "the failure of counsel to consider in advance the known or knowable risk of a judge's recusal may result in the rejection of the appearance by that lawyer or firm." *Id.* Lastly, the court noted that it expects "that lawyers will take pains to avoid appearing in any case in which their appearance may cause disqualification of a judge assigned to the case." *Id.* In addition, in *McCuin*, the Fifth Circuit cautioned that a party could disqualify a judge by employing certain counsel after the case has been pending in order to "force on other litigants and the courts the penalty of starting over before a new judge" simply because he was dissatisfied with the presiding judge's rulings. *McCuin*, 714 F.2d at 1263.

In *Robinson* and *BellSouth*, there was an established pattern of the same attorney or firm being hired that resulted in the judge's recusal. *See* BellSouth, 334 F.3d at 944. Certainly, a pattern of law firm selection resulting in recusal

11

provides significant proof that recusal is the intended result.  However, the *Robinson* and *BellSouth* courts did not indicate that a prior track record is *required* in order to disqualify a law firm whose entry of appearance resulted in the recusal of the presiding judge.  It would not be sensible to establish an arbitrary number of recusals that must occur before disqualification of the attorney or firm is warranted.  In fact, establishing a bright line numerical rule could result in attorneys or firms engaging in this undesirable behavior a certain number of times, knowing that they have not yet established the required "pattern" of behavior.  Accordingly, even a single instance of prior recusal can be significant.

In this case, there was a prior recusal by Judge Conner in another case that is relevant to the analysis.  It is clear from the order he entered in the prior, unrelated case that he viewed an attorney from MEW entering an appearance as creating a conflicting requiring his recusal.  (*See* Doc. 24-1, p. 2.)  It is also clear from MEW's brief in opposition that MEW counsel were aware that Judge Conner's recusal was a possible, and perhaps likely, consequence of entering an appearance in this case.  Indeed, without providing more details, MEW counsel acknowledge that "Judge Conner's recusal a few months prior in an unrelated case with which MEW was involved *was considered as discussion of the potential representation progressed.*"  (Doc. 27, p. 4) (emphasis added.)  Thus, MEW concedes that the possibility of recusal of the presiding judge was discussed prior to agreeing to

represent the York Defendants and it still agreed to represent the York Defendants in this matter.

It is clear that in circumstances such as these, the potential for manipulation and impropriety is significant.  Here, not only was it *knowable* that Judge Conner was likely to recuse himself upon MEW counsel entering their appearance, counsel admit that they, in fact, *knew* that Judge Conner was likely to recuse himself but entered an appearance anyway.  Furthermore, this court finds that based on the degree of relatedness between this case and the patent case, it was not reasonable for MEW to assume that even if Judge Conner were to recuse himself in this case, he would not also recuse himself in the patent case.  Even a cursory review of the complaint in the instant case makes it apparent that the cases are not just docketed as being related, but that conduct relating to the patent litigation forms the basis for the claims in this case.

The fact that MEW counsel knew or should have known that Judge Conner would recuse in this case and the patent case upon MEW counsel entering their appearance in this case underscores the serious concern about the ability of law firms to utilize conflicts and recusals as a trial strategy.  It is now abundantly clear that MEW's entry of appearance in a case assigned to Judge Conner necessitated his recusal in two related cases–one of which had been pending for 20 months.  Whether the entry of appearance in this case was done for the subjective purpose

of forcing recusal is irrelevant, and the court does not make any finding regarding subjective intent.  That is because the objective danger inherent in the ability to force recusal of a particular judge is such a significant concern that it outweighs the right to choice of counsel in this circumstance.

### E. Overriding Need

On balance, the factors weigh in favor of disqualifying MEW.  Therefore, disqualification is warranted absent a showing of an "overriding need for this particular lawyer."  *Robinson*, 79 F.3d at 156.  While not framed using the phrase "overriding need," Plaintiffs, in their reply brief, noted that the York Defendants failed to provide details relating to their search for counsel in this case other than stating that there was a "vetting process."  (Doc. 34, pp. 10–11.)  In response, the York Defendants asserted that they have no duty to detail their search for counsel in this matter or to articulate their evaluation of the qualifications of a seasoned group of litigators at MEW.  (Doc. 42, p. 7.)  Without expressing any doubt as to the qualifications of counsel from MEW, on this record, the court has no basis upon which to conclude that the York Defendants have an overriding need for counsel from MEW to represent them in the instant case.

### F. Request to Reassign Both Cases

Plaintiffs' request to reassign both cases back to Judge Conner is primarily based on the premise that Judge Conner is familiar with both cases and that another

judge handling the cases moving forward would result in the needless expenditure of additional judicial resources.  However, at the outset, the court notes that Judge Conner, at the time of his recusal, had not yet issued any substantive orders in either case.  Additionally, in addressing the instant motion in both cases, the undersigned has already become familiar with the substance of both cases as well as the procedural posture of the cases and the other pending motions.  Thus, while Plaintiffs' assertion about the expenditure of additional judicial resources factors in favor of the disqualification of counsel, the court concludes that reassigning the cases would not remedy the situation.

     Judge Conner recused himself from this and the patent case and both cases were properly reassigned to the undersigned in accordance with this court's case assignment policy.  The undersigned has no basis for recusal in these matters. "Where, as here, an issue is properly before the District Court, it should decide that issue."  *Adkins v. Sogliuzzo*, 625 Fed. Appx. 565, 575 (3d Cir. 2015) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996); *see also* CODE OF CONDUCT FOR U. S. JUDGES, CANON 3A ("A judge should hear and decide matters assigned, unless disqualified"). In addition, even if there were a basis to recuse or reassign, this court does not have the authority to reassign a case directly to another District Court Judge.  Rather, it would result in a random reassignment to another judge, resulting in a further investment of judicial resources.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to disqualify counsel from MEW is granted. Plaintiffs' motion to reassign this and the related patent case back to Judge Conner is denied. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: March 14, 2022