**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SMART COMMUNICATIONS       :    Civil No. 1:21-CV-01708
HOLDING, INC., *et al.*,            :
                                  :
         Plaintiffs,          :
                                    :
         v.                   :
                                    :
GLOBAL TEL-LINK CORPORATION, :
*et al.*,                               :

           Defendants.                Judge Jennifer P. Wilson

## **MEMORANDUM**

Before the court, after remand for further consideration from the Third

Circuit Court of Appeals, is the motion to dismiss filed by Defendant Global Tel-

Link Corp ("GTL").[1]  (Docs. 29, 104-2.)  For the reasons that follow, the motion

will be granted in part and denied in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Plaintiffs Smart Communications Holding, Inc. and HLFIP Holding, Inc.,

d/b/a Smart Communications IP Holdings (collectively "Plaintiffs") filed a

complaint against GTL and York County, York County Prison, and Warden Adam

Ogle ("York Defendants") alleging a violation of the Sherman Act and state-law

---

[1] The determinations the court made regarding York Defendants' motion to dismiss, Doc. 28, were not challenged on appeal.  (Doc. 104-2, p. 7 n3.)  Accordingly, those rulings, contained in Doc. 96, remain in effect.

[2] As there has been no factual development since the appeal to the Third Circuit and the parties did not dispute the court's recitation of the facts alleged in the complaint, much of this section is identical to this court's first opinion on the motions to dismiss in this case.  (Doc. 95.)

claims of tortious interference with prospective business relations, unfair competition, and champerty and maintenance.  (Doc. 1.)  All four counts of the complaint relate, in full or in part, to GTL's conduct in relation to and during the pendency of the related patent litigation.[3]  (*Id.*)

The related patent litigation was initiated via complaint on February 3, 2020.  (*Id.* ¶ 30.)  The patent action alleged infringement by the York Defendants of Plaintiffs' MailGuard technology, which involves processing postal mail for inmates.  (*Id.* ¶¶ 26–30.)  Several months after the patent complaint was filed, counsel arranged for former YCP warden Clair Doll ("Warden Doll") and the CEO of Smart Communications, Mr. Logan, to directly communicate to discuss settlement.  (*Id.* ¶ 34–35.)

According to the complaint in this action, during Mr. Logan and Warden Doll's first day of settlement discussions in the patent litigation on August 25, 2020, "Smart Communications learned that YCP's [inmate calling services, ("ICS")] contract with GTL would expire in December of 2020 and became aware of the financial terms of that contract."  (*Id.* ¶ 36.)  Notably, GTL (and its predecessor company) has been contracted to provide ICS to YCP since 2003.  (*Id.* ¶ 22.)  The following day, Mr. Logan forwarded Warden Doll marketing materials

---

[3] *See HLFIP Holding, Inc. d/b/a/ Smart Communications IP Holdings, v. York County, et al.*, 1:20-CV-00186.

highlighting Plaintiffs' various inmate communication technologies services and options and Warden Doll scheduled a call with Mr. Logan for the following day to discuss Smart Communications' services in more detail. (*Id.* ¶¶ 37–38.) During the next call, Warden Doll invited Mr. Logan to meet with him and his team at YCP to discuss "a resolution of the Patent Litigation and to have Smart Communications present to the YCP team an overview of Smart Communications' inmate communication services included in the marketing materials, including Smart Communications' telephone system and services." (*Id.* ¶ 39.)

Over the next several months, while the patent litigation was stayed pending settlement negotiations, Mr. Logan and Warden Doll engaged in extensive contract negotiations for Smart Communications to provide ICS to YCP. (*See id.* ¶¶ 40–60.) Not surprisingly, these contract negotiations garnered the attention of the current contractor for ICS services, GTL. (*See id.* ¶¶ 61–71.) As a result, GTL engaged in contract discussions with YCP to extend their ICS contract. (*Id.* ¶¶ 66–67.) Plaintiffs further allege that during these discussions, GTL made false and detrimental statements about Smart Communications in an effort to convince YCP not to contract with Plaintiffs. (*Id.* ¶¶ 68–70.) Specifically, these allegations are: if Smart Communications replaced GTL's phone system, GTL would be entitled to seize Smart Communications' phone equipment due to an alleged judgment against a company Smart Communications had purchased; that Smart Communications'

Patent was invalid; and claims that Smart Communications was infringing on patents held by GTL and that GTL would sue for an immediate injunction against Smart Communications.  (*Id.*)

On November 5, 2020, counsel for Plaintiffs contacted then-counsel for the York Defendants "to discuss the upcoming deadline for the parties to report to the Court on the progress towards settlement as required by the terms of the stay that had been entered.  York Defendants' then-Patent Litigation counsel indicated that the York Defendants were still moving towards accepting Smart Communications' contract proposal" for ICS.  (*Id.* ¶ 75.)  Then, "[b]ased on assurances from York Defendants' Patent Litigation counsel of record, on November 13, 2020, Smart Communications agreed to join the York Defendants in representing to the Court presiding over the Patent Litigation that '[t]he parties have engaged and continue to engage in good-faith settlement discussions aimed at resolving this action and reaching a resolution of their dispute.'"  (*Id.* ¶ 78.)

Ultimately, YCP did not enter an ICS contract with Smart Communications and instead entered into a new ICS contract with GTL ("YCP-GTL contract") that contained an indemnification agreement in which GTL agreed to pay the York Defendants' attorneys' fees already incurred in the patent litigation; pay the York Defendants' attorney's fees and costs that would be incurred to litigate the case to judgment; indemnify the York Defendants for all claims, actions, suits, financial

judgment, liability, losses, costs, expenses or damages incurred as a result of the

patent litigation; indemnify the York Defendants for all claims of tortious

interference; and control the patent litigation, including selection of counsel and

determining which arguments to advance in the litigation.  (*Id.* ¶¶ 114–116.)

GTL's attorneys from Sterne Kessler entered their appearance in the patent

litigation on behalf of the York Defendants on January 29, 2021.  (*Id.* ¶¶ 88–94.)

Existing counsel for the York Defendants withdrew their appearances the same

day.

About eight months later, on October 6, 2021, Plaintiffs filed the instant

complaint, naming the York Defendants and GTL in this lawsuit.  (Doc. 1.)  On

February 23, 2022, Plaintiffs filed a motion for preliminary injunction, seeking to

invalidate the indemnification agreement between GTL and the York Defendants

in the related patent litigation based on a theory of maintenance.  (Doc. 62.)  On

April 7, 2022, the court denied that motion, finding that Plaintiffs failed to

demonstrate that they would suffer irreparable harm if preliminary injunctive relief

were denied.  (Docs. 77, 78.)

On December 6, 2021, both the York Defendants and GTL filed motions to

dismiss.  (Docs. 28, 29.)  The briefs in support of these motions were filed on

December 20, 2021.  (Docs. 36, 37.)  Plaintiffs timely filed a brief in opposition to

the York Defendants' motion on January 14, 2022, and a brief in opposition to

GTL's motion on January 27, 2022.  (Docs. 47, 51.)  The York Defendants and GTL each filed a reply brief on January 28, 2022.  (Docs. 52, 53.)

On April 29, 2022, GTL submitted a notice of supplemental authority to notify the court of a recent precedential opinion by the Third Circuit Court of Appeals addressing antitrust standing: *Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242 (3d Cir. 2022).  (Doc. 86.)[4]  Upon reviewing this decision, the court issued an order directing supplemental briefing to address the issue of antitrust standing, and scheduling oral argument for August 26, 2022.  (Doc. 88.)  In accordance with that order, GTL and the York Defendants submitted their supplemental letter briefs on July 6, 2022.  (Docs. 89, 90.)  Plaintiffs then timely filed their responsive letter brief on July 20, 2022.  (Doc. 91.)  Oral argument on these motions was held on August 26, 2022.

On November 11, 2022, this court issued an order and memorandum granting both Defendants' motions to dismiss.  Starting with the antitrust claims, the court held that the York County Prison itself could not constitute the relevant geographic market.  (Doc. 91, p. 11.)[5]  Next, the court held that the complaint did not sufficiently allege substantial foreclosure of the relevant nationwide ICS

---

[4] Supplemental authority was also submitted on April 14, 2022, and September 23, 2022.  (Docs. 80, 93.)

[5] For ease of reference, the court utilizes the page numbers contained in the CM/ECF header.

market.  (*Id.* at 13.)  The court also determined that the complaint did not adequately allege antitrust standing.  (*Id.* at 20.)

The court next examined the various immunities claimed by the York Defendants.  First, the court determined that the York Defendants were not entitled to *Parker* immunity at the motion to dismiss stage, but that the assertion could be renewed at summary judgment.  (*Id.* at 24.)  Second, the court determined that YCP was entitled to Eleventh Amendment immunity and dismissed Count 1 with prejudice against YCP.  (*Id.* at 26.)  Regarding Warden Ogle, the decided he was entitled to Eleventh Amendment immunity, to the extent that the relief requested is prospective, injunctive relief, and dismissed Count 1 without prejudice as to Warden Ogle.  (*Id.*)

The court then considered the state law claims for tortious interference with prospective business relations and unfair competition.  The court held that the complaint alleged a prospective contractual relationship, but the complaint failed to show an absence of privilege, under Restatement (Second) of Torts § 768, because it failed to allege any independently actionable conduct.  (*Id.* at 29–35.)  Specifically, on this point, the court found that the complaint did not allege an independently actionable defamation because its allegations of defamatory statements were conclusory, and the complaint failed to allege an independently actionable unfair competition claim because that claim would have alleged the

same conduct as described in the unfair competition claim already alleged in the complaint.  (*Id.*)  The court also found that the complaint failed to show an absence of justification because, after consideration of the factors in Restatement (Second) of Torts § 767, GTL acted to protect a legitimate business concern.  (*Id.* at 35–37.)

Moving on to the unfair competition claim itself, the court found that Plaintiffs had presented no case law supporting a cause of action for unfair competition based on the circumstances presented in this case.  (*Id.* at 37, 38.) Finally, the court held that the complaint failed to sufficiently allege a claim of maintenance.  (*Id.* at 38–42.)  Thus, the court dismissed Count 1 against YCP and Warden Ogle with prejudice and Count 1 against York County and GTL and Counts 2, 3 and 4, without prejudice with leave to amend.[6]  (Doc. 96.)

Thereafter, on November 30, 2022, Smart filed a notice of appeal.  (Doc. 97.)  Smart also filed a notice of intention to stand on its complaint on December 16, 2022.  (Doc. 99.)  After oral argument, the Third Circuit upheld the court's determination regarding the anti-trust claims, but remanded the state law claims for further consideration consistent with the opinion.  (Doc. 104-2.)  Specifically, the Third Circuit decided that Smart's allegations of defamatory statements by GTL were not entirely conclusory, and directed this court to consider whether these

---

[6]  Smart did not amend its complaint within the time allotted by the court's Order and, accordingly, the Clerk of Courts closed the case on November 23, 2022.

allegations contain any factual statements or mixed opinion statements sufficient to support an independently actionable defamation claim.  (*Id.* at 12–16.)  The Third Circuit also directed the court to further consider the unfair competition claim and what elements are or are not satisfied by the complaint.  (*Id.* at 16.)

After receipt of the mandate from the Third Circuit, this court informed the parties via Order that it would reconsider the state law tort claims in light of the Third Circuit opinion from the original motion to dismiss briefing.  (Doc. 105.) Accordingly, the issue is ripe for review.

## JURISDICTION AND VENUE

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Moreover, this court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between the Plaintiff and Defendant and Plaintiff asserts that the amount in controversy exceeds $75,000.  The court also has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367.  Venue is appropriate under 28 U.S.C. § 1391.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

After remand from the Third Circuit, there are only two remaining issues: 1) whether Smart has adequately alleged an independent cause of action, namely defamation, to support its tortious interference claim; and 2) whether Smart has adequately alleged an unfair competition claim. The court will consider both in turn.

### A. Tortious Interference with a Business Relationship

A claim for tortious interference with a business relationship requires the plaintiff to plead the following elements: "(1) a prospective contractual relationship; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct." *Brokerage Concepts v. United States Healthcare*, 140 F.3d 494, 529–30 (3d Cir. 1998). The court previously decided that Smart had adequately alleged a prospective contractual relationship, and this determination was not challenged on appeal. Thus, the court will now turn to element three.

### 1. Absence of Privilege or Justification

In Pennsylvania, a Plaintiff must show, as part of its *prima facie* case, that the defendant's conduct was not justified or privileged. *Acumed LLC v. Advanced Surg. Servs.*, 561 F.3d 199, 214 (3d Cir. 2009) (citing *Silver v. Mendel*, 594 F.2d 598, 602 n.6 (3d Cir. 1990)). As to privilege for a defendant's conduct, "Pennsylvania has adopted section 768 of the Restatement (Second) of Torts, which recognizes that competitors, in certain circumstances, are privileged in the course of competition to interfere with others' prospective contractual relationships." *Acumed*, 561 F.3d at 215 (citing *Gilbert v. Otterson*, 550 A.2d 550, 554 (Pa. Super. Ct. 1998). This is because two parties seeking to sell similar

11

products to prospective purchasers are necessarily interfering with the other's

attempts to do the same. *Acumed*, 561 F.3d at 215. Thus, under the Restatement:

> One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if: (a) the relation concerns a matter involved in the competition between the actor and the other; (b) the actor does not employ wrongful means; (c) his action does not create or continue an unlawful restraint of trade; and (d) his purpose is at least in part to advance his interest in competing with the other.

RESTATEMENT (SECOND) OF TORTS § 768.

In applying this section, courts also rely on comment e to § 768 and have

interpreted the "wrongful means" element to require that a plaintiff demonstrate

that a defendant engaged in conduct that was actionable on a basis independent of

the tortious interference claim. *See Acumed*, 561 F.3d at 215; *see also Brokerage*

Concepts, 140 F.3d at 531. Moreover, the Third Circuit noted that even though the

Pennsylvania courts have not interpreted the "wrongful means" element, it is likely

that the Pennsylvania Supreme Court would adopt this meaning. *Acumed*, 561

F.3d at 215–16. Indeed, both parties agree that the appropriate interpretation of

this element of the business competitor's privilege requires that the conduct must

be independently actionable. (Doc. 51, p. 24; Doc. 37, pp. 20–21.)

On remand, the only issue to decide is whether Smart adequately pleads a

defamation claim to support an independently actionable cause of action to satisfy

the "wrongful means" element of the tortious interference claim. The allegedly

defamatory statements are contained in the complaint at ¶¶ 67–71 and summarized

by the Third Circuit as follows:

> Smart alleges that in order to make York County drop its negotiations
> with Smart, GTL made multiple false statements to York County and
> YCP telling them that: pursuant to a judgment it had, it would seize
> Smart's equipment that would be installed to fulfill the ICS contract at
> YCP; Smart's patent at issue in its patent-litigation lawsuit against York
> and [YCP] was invalid; and, Smart was infringing multiple GTL
> patents and GTL would sue Smart to prohibit it form using those
> infringing technologies at YCP.

(Doc. 104-2, p. 14.)

Smart contend that the statements were "published" to York County

officials; the statements applied to Smart; the recipients understood their

defamatory meaning and applicability to Smart; the statements financially harmed

Smart by causing it to lose a contract with the County; and no privilege applied.

(*Id.* at 26–27). In the reply Brief, GTL first notes that Smart has not raised a claim

of defamation in the complaint, but notwithstanding that problem, Smart's factual

allegations do not establish a *prima facie* case of defamation. (Doc. 53, pp. 9–10.)

GTL maintains that the face of the complaint contains merely conclusory

allegations[7] and that the statements allegedly made by GTL made were opinion,

not fact, and therefore cannot form the basis of a defamation claim. (*Id.*)

---

[7] As noted, the Third Circuit has determined that the allegations are not conclusory. Thus, the
court will not address this argument again.

In Pennsylvania, defamation is defined by statute.  42 Pa. Con. Stat. §

8343.  The statute provides:

> In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:
>
> (1) The defamatory character of the communication.
>
> (2) Its publication by the defendant.
>
> (3) Its application to the plaintiff.
>
> (4) The understanding by the recipient of its defamatory meaning.
>
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
>
> (6) Special harm resulting to the plaintiff from its publication.
>
> (7) Abuse of a conditionally privileged occasion.

*Id.*  A communication is defamatory in character if it "tends so to harm the

reputation of another as to lower him or her in the estimation of the community or

to deter third persons from associating or dealing with him or her." *U.S.*

*Healthcare v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 923 (3d

Cir.1990).  However, the harm suffered here must be "the kind of harm which has

grievously fractured his standing in the community of respectable society."  *Id.*

(quoting *Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004)).  Moreover,

"[t]he touchstone in determining whether a statement is capable of defamatory

meaning is how the statement would be interpreted by the average person to whom

it was directed.  *Mzamane v. Winfrey*, 693 F. Supp. 2d. 442, 479 (E.D. Pa. 2010).

14

Overall, the court must view the statements in context.  *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 216 (Pa. 1981).

Only statements of fact are actionable as defamation.  *Id.*  An opinion is actionable only if it could "reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion."  *Remick v. Manfredy*, 283 F.3d 248, 261 (3d Cir. 2001) (internal citations omitted).  Pennsylvania courts take guidance from Restatement (Second) of Torts § 566 in determining whether a defamatory statement is actionable.  *Green v. Minzer*, 692 A.2d 169, 174 (Pa. Super. Ct. 1997).  Specifically, Pennsylvania courts rely on comment (c), which provides:

> A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.  But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently.  The difference lies in the effect upon the recipient of the communication.  In the first case, the communication itself indicates to him that there is no defamatory factual statement.  In the second, it does not, and if the recipient draws the reasonable conclusion that the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts, the defendant is subject to liability.

RESTATEMENT (SECOND) TORTS § 566 cmt c.

There are three allegedly defamatory statements at issue here.  First, there is the statement that:

> Smart Communications had purchased a company named Lattice and that, because of Smart Communications' alleged arrangement with Lattice, if YCP proceeded to replace GTL's phone equipment with Smart Communications' phone equipment, GTL had a right to and would exercise its right to seize Smart Communications' equipment based on alleged judgment that GTL had received against Lattice, thereby leaving YCP without any communications service for the duration of its potential contract with Smart Communications.

(Doc. 1, ¶ 68.)  Second, there is the statement that "Smart Communications' Asserted Patent allegedly was invalid and that the York Defendants should not settle the Patent Litigation."  (*Id.* at ¶ 69.)  Third, there is the statement that "Smart Communications was infringing multiple GTL patents, and that GTL would sue Smart Communications and immediately obtain an injunction to prohibit Smart Communications from providing certain services[.]"  (*Id.* at ¶ 70.)  Smart sums up all of these allegations as follows:

> GTL intentionally and maliciously interfered with the prospective contract between Smart Communications and York County by falsely reporting to York County officials that: (a) Smart Communications would not be able to fulfill the contractual offer set forth in its proposal; (b) Smart Communications did not own the rights to the systems and technology needed to perform the contractual duties set forth in its proposal; and (c) if Smart Communications were awarded the ICS contract, there would be an interruption in telephone services available to the inmates, and disorder at the prison would ensue.

(Doc. 1, ¶ 159.)  The court will analyze each in turn.

GTL argues that the statements are "inactionable statements of prediction and opinion."  (Doc. 37, p. 21.)  Specifically, the statements that Smart "would not be able to fulfill the contractual offer, did not own the rights to the systems and

technology needed, and that there would be an interruption in telephone service[,]" are expressions of opinion.  (*Id.* at 21, 22) (citing Doc. 1, ¶ 159.)  Smart counters that the statement that "GTL had the right to seize Smart Communications' equipment" is a statement of fact and, "the statement that Smart . . . was infringing multiple GTL patents, if an opinion could 'reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion.'"  (Doc. 51, p. 26.)

The first statement regarding an alleged judgment that would authorize GTL to seize Smart's phone equipment would appear to the average recipient as a statement of fact.  It also does damage to Smart's business relationships because it is reasonable to infer that Smart is unable to carry through on their contractual obligations based on this statement.  Accordingly, this statement is defamatory in character and actionable.

The second statement regarding the validity of Smarts' patent and whether the York Defendants should settle is a statement of opinion, especially considering it was the patent at issue in the underlying litigation.  The York Defendants would have understood that GTL was opining on the ongoing patent litigation.  Moreover, this statement does not imply undisclosed defamatory facts.  It only conveys GTL's opinion on the underlying patent lawsuit and GTL's opinion as to what

York County should do in that situation.  Therefore, this statement is not defamatory in nature, and not actionable as defamation.

The third statement that Smart was infringing on multiple GTL patents and that GTL would sue Smart is a statement of opinion, similar to the above statement.  The third statement expresses how GTL views the viability of certain patents and expresses its opinion as to the appropriate course of action. Accordingly, this statement is not actionable as a defamatory statement.

In total, Smart has alleged one actionable defamatory statement.  The parties' do not address the remaining elements of a defamation cause of action. For the purpose of deciding whether the complaint has adequately stated a claim, the court will assume they have been met at this juncture.  Accordingly, Smart has alleged an independently actionable wrong, namely defamation, for purposes of the tortious interference claim, satisfying element three of the tortious interference claim.  The court will now move on to the remaining elements.

## 2.  Intent and Damages

Element two of a tortious interference with contractual relationship claim requires a plaintiff to plead that the defendant had a "purpose or intent to harm the plaintiff by preventing the relation from occurring[.]"  *Brokerage Concepts*, 140 F.3d at 530.  "As with intentional torts generally, intent in this case may be shown where the actor knows an injury is certain or substantially certain to occur as a

result of his action." *Total Care Sys., Inc. v. Coons*, 860 F. Supp. 236, 241 (E.D. Pa. 1994). Neither party discusses this element. However, the court concludes that Smart has pleaded this element by alleging that "GTL intentionally and maliciously interfered with the prospective contract between Smart Communications and York County[.]" (Doc. 1, ¶ 159.) Accordingly, this element has been adequately alleged.

Finally, turning to element four, which requires that the tortious conduct cause actual legal damage, GTL argues that the timeline established by the complaint does not support actual damage because YCP and Smart continued to have contract negotiations after the allegedly defamatory statements. (Doc. 37, p. 24.) Smart argues that "an immediate cause-and-effect relationship" is not necessary, and they have pleaded "plausible factual content to support a reasonable inference that GTL's conduct caused Smart to lose the contract." (Doc. 51, p. 28.) The court agrees with Smart. At this stage, and because determinations of cause are inherently fact bound, Smart has adequately pleaded a causal relationship between GTL's allegedly tortious conduct and YCP's decision not to contract with Smart.

In conclusion, Smart has adequately pleaded a cause of action for tortious interference based on the single defamatory statement outlined above. GTL's motion to dismiss will be denied as to Count II for this reason.

### B. Unfair Competition

GTL argues that an unfair competition cause of action requires facts alleging that a defendant has "passed off" certain goods as their own, which resulted in confusion between the defendant's goods and a rival's goods and that an unfair competition claim mirrors a cause of action under the Lanham Act. (Doc. 37, pp. 24, 26.) Accordingly, GTL argues that the unfair competition claim in the complaint must fail because the "false statements" in this case are not regarding the "origin, sponsorship or affiliation" of Smart's services. (*Id.* at 25.) Smart responds that "the tort is not so narrow[,]" and relies on *Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy*, 203 A.2d 469 (Pa. 1964), in support of a broader definition of an unfair competition claim. (Doc. 51, p. 28.) In *Schneider Dairy*, employees of one dairy left to work for a competing dairy, and in the course of their new employment, the employees made false and misleading statements "as to the circumstance under which they left the employ of Colteryahn and such representations were made to play on the sympathies of the customers and influence them so that they could be obtained by Schneider." *Id.* at 284. The Pennsylvania Supreme Court held that "[a]llowing this type of conduct is to countenance unfair competition[,]" and "[e]quity will prevent unjustified interference with contractual relationships." *Id.*

Smart also relies on *Bldg. Materials Corp. of Am. v. Rotter*, 535 F. Supp. 2d 518 (E.D. Pa. 2008) and *Lakeview Ambulance & Med. Servs., Inc. v. Gold Cross Ambulance & Med. Servs., Inc.*, No. 1994-2166, 1995 WL 842000 (Pa. Com. Pl. Oct. 18, 1995) for its contention that an unfair competition claim can based on a claim of tortious interference.  In *Building Materials*, the Eastern District of Pennsylvania noted that "according to the Third Circuit, '[a] claim of unfair competition under Pennsylvania law requires proof that the defendant has 'passed off' the goods of one manufacturer or vendor as those of another, thus creating confusion between his own goods and those of the rival.'"  *Bldg. Materials*, 535 F. Supp. 2d at 526 n.4 (citing *Scanvec Amiable Ltd. v. Chang*, 80 Fed. App'x 171, 180 (3d Cir. 2003)).  The court then noted that some Pennsylvania Courts of Common Pleas had begun adopting the definition of unfair competition contained in the Restatement (Third) of Unfair Competition, which provides that "[a]s a general matter, if the means of competition are otherwise tortious with respect to the injured party, they will also ordinarily constitute an unfair method of competition[,]" but that no Pennsylvania appellate court has accepted that definition.  *Id.*  The court also noted that several judges in the Eastern District have applied the Restatement definition.  *Id.*  Ultimately, the court dismissed the unfair competition claim with leave to reassert at a later time "in the hope that, in the near future, Pennsylvania courts will provide more guidance on the issue."  *Id.*

*Lakeview* dealt with two competing ambulance companies, in which Plaintiff Lakeview alleged that Defendant Gold Cross "embarked on a campaign to block expansion in the area," "sought to have Plaintiff's . . . license denied," and also "made false and defamatory statements" to local newspapers. *Lakeview*, 1995 WL 942000 at *1. The Mercer County Court of Common Pleas reasoned that:

> Unfair competition is conduct which is contrary to honest, industrial and commercial practices. The doctrine of unfair competition extends to the misappropriation for the commercial advantage of a benefit or a property right belonging to another. Those in business need to be assured that competitors will not be permitted to engage in conduct which falls below the minimum standard of fair dealing. Thus, the doctrine of unfair competition provides the legal basis for business competitors to insist on fair play in the market in which they are involved.

*Id.* at *1–*2. The court then noted that in Pennsylvania, "the elements of a cause of action for unfair competition under Pennsylvania common law are identical to those under the federal Lanham Act[,]" but then did not apply that standard to the case before it because the Lanham Act "addresses only patent and trademark actions." *Id.* at *2. The court finally looked to the Restatement (Third) of Unfair Competition § 1, comment (g) which provides, in part, that "if a competitor interferes with the commercial relations of another by engaging in defamation or by establishing or maintaining an unlawful restraint of trade, the conduct also includes unfair competition." *Id.* (quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION, § 1 cmt g.)) Ultimately, the court denied the preliminary objection

22

in the nature of a demurrer, deciding that the claim was sufficient as a matter of law.[8] *Id.* at *3.

As noted by GTL and the above authorities, the Third Circuit has defined an unfair competition claim under Pennsylvania law as requiring "proof that the defendant has 'passed off' the goods of one manufacturer or vendor as those of another, thus creating confusion between his ow goods, and those of the rival." *Scanvec*, 80 Fed. App'x at 180 (citing *Pa. State Univ. v. Univ. Orthopedics, Ltd*, 706 A.2d 863, 870–71 (Pa. Super. Ct. 1998)).  While "the contours of Pennsylvania unfair competition law are not entirely clear [,] . . . *all* unfair competition claims recognized by Pennsylvania courts involved some accusation of "passing off" of one's own product as another, or a false or dishonest statement, or tortious interference with contract, or intellectual property theft."  *Checker Cab Phila., Inc. v. Uber Tech. Inc.*, 689 Fed. App'x 707, 709 (3d Cir. 2017).  However, to define an unfair competition claim simply as tortiously interfering with a contract and causing damages makes it indistinguishable from a tortious interference claim.  Rather, it appears that a better definition is that "[a] claim for unfair competition encompasses trademark infringement, but also includes a

---

[8] In Pennsylvania, a preliminary objection in the nature of a demurrer tests the legal sufficiency of a claim, and "admits all well-pleaded material facts as well as all reasonable inferences deducible therefrom, but not conclusions of law or unjustified inferences, with all doubts resolved against the moving party."  Standard Pennsylvania Practice 2d § 25:64.

broader range of unfair practices, which may generally be described as a misappropriation of the skill, expenditures and labor of another." *Pa. State Univ.*, 706 A.2d at 867. In this case, there are no allegations that GTL "passed off" or misappropriated some service or good of Smart's as its own. Accordingly, the complaint fails to state a claim for unfair competition, and the motion to dismiss will be granted with prejudice[9] as to Count II.

<div align="center">

### CONCLUSION

</div>

After consideration in accord with the Third Circuit's opinion and the law, the court will grant in part and deny in part GTL's motion to dismiss. An order follows.

<div style="margin-left: 40%;">

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

</div>

Dated: May 13, 2024

---

[9] The court dismisses this count with prejudice because the parties introduced definitional, legal arguments as to the scope of an unfair competition claim. Smart has not argued that it meets the narrower definition. Accordingly, because the court determines that the narrower definition is the correct one based on controlling precedent, and Smart has not argued that it has pleaded a claim under that definition, the count will be dismissed with prejudice.